Judge Underwood,
delivered the opinion of the court.
On the 20th of-June, 18L5, J. Scrivener' recovered a judgment in the Estill circuit court against the administrators of N. Park for $704 damages, besides costs. On the same day, B. Alexander recoverd a judgment in the same court against said Park’s ad'ministrators for ,5103 60 cents in damages besides costs.
Upon these judgments executions issued against the estate of N. Park in the hands of his administrators to be administered; that in favor of Alexander was satisfied by the sale of a slave, and need not be further noticed; that in favor of Scrivener was levied on a tract of land which belonged to N. Park in his. life time, and which, upon his death, descended to his heirs.
By the sale of this land, $472 75 cents of the execution were made,:and the balance was made out of the sale of a slave. The sheriff returned the execution satisfied. This execution,, although in Scrivener’s name, belonged to John VYhite in equity. His son James was the deputy sheriff who levied on and sold the land owned by the heirs of N. Park, for part of whom, if not all, said .Tames was guardian, they being infants. Nicholas While became the purchaser of the land, which lay in two parcels, and said James, as sheriff!, executed to him a separate deed for each parcel.
Execution y;s. aclm’rs. levied upon land descended to lieirs of intestate : heirs institute ejectment and recover the land; purchaser thus ousted entitled to decree vs. adm’rs. for the amount of' credit on the execution and interest If adm’rs. thus chargeable, not before the court, bill should be dismissed without prejudice'.
*604 Afterwards, Nicholas While died, leaving John White, his father, heir at law. John White thereafter conveyed these lauds to the said James (likewise a son,) by deed with general,warranty. James White, shortly after the sale made- by him as sheriff, took possession of the- lands and enjoyed them for many years, and made improvements upon them. The heirs of N. Park at length instituted an action ofiejectment, and recovered possession of the lands illegally sold as aforesaid under execution against the assets in the hands pf their deceased father’s administrators. Thereupon, ■the heirs of James White (he being dead,) instituted actions of covenant upon the warranties contained in the deeds, against the administrators of John White, the. vendor, (also dead,) and recovered the- sums expressed in the- deeds, as the consideration, with interest.
To injoin these judgments, the administrators of .John White filed this bill, charging that the land had been conveyed by John White to bis son James, as a gift without consideration, and that so rnuch of the deeds as expressed a consideration .in- money, was by mistake inserted; that James White was answerable, tor having illegally levied on arid, sold the land; and that,, as vendee, he had used and possessed', and should, therefore, account for rents and profits.
Upon these- grounds, relief was asked against the representatives of James White, but if that was refused, then a decree was asked for, against the administrators of John White, far the amount for which the lands sold,, and.which had been credited upon the execution in Scrivener’s name.
The court dismissed the bill with costs, and dissolved the injunction obtained with damages, but without assessing their amount. To reverse this decree, J., White’s administrators prosecute this writ of error.
If the court had dismissed the bill without prejudice, and had ascertained the damages, we should not have disturbed the decree.' We think it was erroneous to dismiss the bill absolutely. Upon the merits of the case, the administrators of John White were- entitled to a decree against the administrators and heirs of N* Parle for the §'472 75 cents credited upon the exentv *605 ¿ion in consequence of the sale of the lands, with interest thereon from the date of the credit up to the time of rendering the decree.
It does not appear that the administrators of N. Park, although made defendants in the bill, wei;e ever served with process. They filed .no answer. Therefore, it would have been proper to dismiss without prejudice, as the administrators of Park were essential parties, and the decree should be satisfied out of the assets in their hands before touching the estate descended to the heirs.
The case of Jones vs. Henry, &c. III Littell, 427, settles the principles upon which John White’s administrators are entitled to recover from the representatives of N Park, and shows that this is a case proper for the jurisdiction of the chancellor. By the return of the execution satisfied, the plaintiff, Scrivener, has not, nor has his transferee, White, any legal remedy by whiqh to obtain the monej', erroneously credited upon the execution, as the result of the sale of the property, not liable to the execution. The case cited is so fully in point, that it is needless to discuss the question of liability on the part of N. Park’s representatives. Their liability exists in favor of some one, because a demand against the estate of N. Park has been satisfied by the sale of property not subject to the execution.
But, it is contended, that the personal representative of Nicholas White, who purchased the land at the sheriff’s sale, is the proper person to assert this claim against the representatives of N. Park, and not the administrators of John White, who succeeded to the land, as heir at law.
Suppose Nicholas White had conveyed this land, after his purchase, without warranty, and had received, from his vendee the full amount of the purchase money paid by him to the sheriff, in that case who would be. entitled in equity to the recourse upon N. Park’s representatives? Surely it would be against conscience Shen Park’s heirs recovered the land, then to let icholas White recover what he gave for it, and hold that in addition to what was received from his vendee. This would be the result in case of a conveyance ufithout warranty and without fraud. To prevent such injustice the vendee should bo protected by a court of *606 étjiiityrío asserting'his right to the consideration given for the lost land. Will a descent cast alter the rtíle? We think it should not. The heir should occupy grounds as' favorable as the vendee without warranty» This doctrine Seems to conform with the analogies of' the law which gives to the heir the damages for the breach of real covenants happening after the death of the ancestor.
As long as the lands purchased by Nicholas White at the sheriff’s sale remained in-his possession, or that of his heir or the vendee of either of them; there was apparently a vested title in the possession, and: it seems to havebeen the intention of the parties to make it a valid' one. When this state of things was frustrated by the recovery in the action of ejectment, then the possessor holding the claim or title derived from the sheriff’s sale, whether by descent or purchase,’should be permitted in equity to assert a right to the consideration paid for the land. This is the only rule which will lead to the attainment of justice in all cases similar to the present. According to this rule the heirs of James White, who were evicted from the land, might have successfully claimed the amount for which the- representatives of N. Park are liable. But, as they had A preferable remedy on the covenants of warranty contained in the deeds to their ancestor, they had an unquestionable right to resort to it, and abandon the claim upon the representatives of N. Park. In many cases the holder under a deed with warranty might be entitled to recover much more from his immediate warrantor than he could get by going further back. The heirs of James White, having taken their recourse against John White’s administrators, placed these in the condition they would have been in had their intestate, never conveyed by reinvesting them with the equity against N. Park’s representatives for the amount credited on the execution on account of the illegal sale of the land. Had the proper parlies been before the court the relief indicated should have been given.
It is contended that the lapse of time constitutes a bar to relief. We think it should not. We see no .reason for applying the principles of any limitation,1 counting time before the recovery of the property il *607 legally sold under execution, from the 'purchaser of his representatives or vendee, against the person in possession, claiming title when such recovery is had! Time should only run against the vendor of the person so possessed, and from whom the property is recovered, "from the date of the judgment or decree fixing such vendor's liability* Under these rules the complainants are not barred by lapse of time.
We have said that N. Parle’s representatives should account for interest. His heirs, upon whom the debt ■-•may fall in case the assets in the hands of the ad minis-, tralors are exhausted, arc entitled to rents for the use and occupation of their lands. And hence, with peculiar fitness, were the administrators and heirs of James White brought before the court and required to Account for rents during the use and occupancy of -themselves and ancestor. Park’s heirs, while infants, were illegally deprived by the instrumentality of their •guardian of the profits of their land, he acting ns sheriff. The lands afterwards came into his hands, claiming them as owner; but it seems to us from the proof, that James White was never a bonajide possessor, and, therefore, that'his heirs are not entitled toa discount against the rents for the value of the improvement's made upon the lands by him. If his heirs have made lasting and valuable improvements, they may stand upon different ground.
In estimating the rents, therefore, they should he. -made up of the value of the annual use of the lands, •regarding taem in the condition they were when James White took possession; alio whig yearly for suitable repairs, without allowing any tiling for additional improvements made by James White, and without charging rent on such improvements. If the heirs of James White have made improvements in good faith, the court will of course allow compensation for them and charge rent for their use. Had all proper parties been before the court, the whole controversy, in all its branches, might have been settled by compelling James White’s representatives to account for the rents, and setting off the amount with which they were chargeable therefor, against so much of their judgment against the complainants, and by crediting the representatives of N. Parfewitli the amount of these rents to bs set off against *608 -so much of their liability for the sum improperly crodjted Qn jjje e3:ecution and its interest. Thus, compíete justice could have taken place, and many com troversies been ended, to the delight of the chancellor. the return of the cause, time must be allowed for further preparation should it be asked for. If it is not made the bill must be dismissed without prejudice, and, the amount of the damages fixed in the decree. New facts may possibly render it proper to change the views we have taken; and,|therefore, we do not intend to conclude any thing between the parties, and place it beyond the operation of any new fact which maybe developed. This opinion is pronounced upon the record as it now stands, and which may hereafter be materially changed. The circuit court will he governed by this opinion so far as it is applicable to the new' state of case which the cause, may assume. A suit between the representatives of N. Park and those of James White for the rents, is Spoken of as pending. By connecting that suit with this upon the return of the cause, particularly if that has been decided, the cause may present a new aspect.
Owsley and Ccrpcrlon, for complainants; Turner, for -defendants.
We perceive no evidence which will justify granting the complainants relief upon any other grounds than those already noticed. This action is transitory. The Estill circuit court had not exclusive jurisdiction. There is nothing in the objection that the chancellor in Madison is about to change or alter the common law records of the Estill circuit. The case of Jones vs. Henry, &c. shows that such a case as this is propel' for the cognizance of the chancellor, and that he will grant relief not by undertaking to control or alter a common law record, but for reasons sustaining the jurisdiction of a court of chancery, growing out of the absence of remedy at law, when the plainest dictates of natural justice requires that some remedy should be ajTorded.
Decree reversed with costs, and cause remanded for proceedings not inconsistent with this opinion.